11 N.J. Super. 533 (1951)
78 A.2d 580
ANNA DICK, PLAINTIFF-APPELLANT,
v.
LEO M. DICK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 1951.
Decided February 7, 1951.
*535 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Charles Handler argued the cause for the plaintiff-appellant (Messrs. Samuel H. Berlin and Martin Wm. Wallace, on the brief).
Mr. Julius Stein argued the cause for the defendant-respondent (Messrs. Stein & Feinseth, attorneys).
The opinion of the court was delivered by EASTWOOD, J.A.D.
Plaintiff appeals from the judgment of the Chancery Division, dismissing her complaint seeking *536 separate maintenance and payment of defendant's promissory note in the sum of $6,000, representing the agreed value of personal property unlawfully converted by defendant to his own use.
For the purpose of this determination, we think a condensed version of the proofs will suffice. The parties were married at Orange, New Jersey, on November 30, 1945. They went to Miami Beach, Florida, for their honeymoon. On February 3, 1946, during their honeymoon, the defendant surreptitiously left his wife taking her furs and jewelry. By appointment, he met his wife on the street the following day, when he returned some of the articles. While in Florida the defendant instituted and abandoned an annulment action. On February 22, 1946, the plaintiff returned alone to an apartment at 32 South Munn Avenue, East Orange, to which the defendant returned two or three days later. Subsequently, while the plaintiff was in New York City, where the defendant had induced her to go on the pretext that he would return her jewelry, he returned to East Orange, removed all of the furnishings from their apartment, and having previously effected a cancellation of the lease subletting her apartment at 67 Munn Avenue, East Orange, caused all her belongings to be placed therein. Thereafter, she proceeded to make a criminal complaint against the defendant for abandonment, an indictment being returned therefor by the Essex County Grand Jury. While searching for the defendant, he contacted his wife, asking her to meet him in Nevada, to which proposal she agreed upon receipt of $400 for her expenses. A temporary reconciliation was effected and they lived together for ten days at Los Angeles, California, when the plaintiff returned alone to East Orange. The parties remained separated until September, 1946, when the plaintiff was served with notice of divorce proceedings instituted by defendant in Navada. When she went there to contest the action, the parties again became reconciled. The divorce suit was thereupon abandoned and on September 26, 1946, a written agreement was entered into reciting the reconciliation of the parties, providing for the withdrawal of the indictment and defendant agreed to return *537 the stolen jewelry, giving his promissory note in the sum of $6,000 as security therefor. The parties thereupon returned to New York City, lived together there for three weeks, after which the plaintiff returned to her apartment in East Orange, the defendant going to his apartment in the Park Hotel in Plainfield, New Jersey. During their entire married life, the plaintiff maintained her apartment at 67 Munn Avenue, except for the brief period when she sublet it. Subsequent to the first separation of the parties as well as following the institution of her action, the parties resumed marital relations on numerous occasions. Subsequent to the delivery of the promissory note to plaintiff, the defendant instituted bankruptcy proceedings, wherein the plaintiff filed a claim reciting defendant's larceny of her jewelry and the execution of the note as security for the return thereof.
Plaintiff contends that (1) the facts establish that the defendant abandoned or separated himself from his wife or neglected or failed to maintain and provide for her, and that he has not sincerely effected a reconciliation or met his marital obligations; (2) that the defendant's discharge in bankruptcy did not operate to release him from his liability to the plaintiff for the value of the personal property unlawfully converted by the defendant; and (3) that the evidence requires new or amended findings of fact.
At common law the husband was liable for the support of his wife while they lived apart with his consent. Buttlar v. Buttlar, 57 N.J. Eq. 645, 656 (E. & A. 1899). The husband's legal duty to support his wife does not cease by reason of her absence from his home at his instance or with his consent. It is only when he desires her presence in his home that her presence in that home can be made a condition precedent to his obligation of support. Until it is made to appear that the wife's absence from her husband's home is without his cooperation or consent or is against his will, the issue as to whether the husband has by his conduct sacrificed his right to her presence in his home is not a live issue. When a wife resides away from her husband with his consent his obligation to support her continues. Barefoot v. Barefoot, 83 N.J. Eq. *538 685 (E. & A. 1914). The offense described in our separate maintenance statute consists essentially in the husband's failure or refusal to maintain and provide for his wife as long as he is under the common law duty to do so. Weigand v. Weigand, 41 N.J. Eq. 202 (Ch. 1886); affirmed, 42 N.J. Eq. 699 (E.& A. 1887). The law favors the continued cohabitation of the parties, and the husband's consent to separation is not to be deemed justifiable cause for such separation nor does the wife's consent thereto absolve the husband from his common law duty to maintain her. Richman v. Richman, 129 N.J. Eq. 114 (E.& A. 1941), affirmed on Advisory Master Herr's opinion. The parties in the instant case being undivorced, were living separate and apart from each other. The plaintiff contends that at all times she was willing to live with her husband as man and wife and as proof thereof points to the numerous occasions when she promptly responded to her husband's invitation to live with him. But, she asserts, each time he terminated the relationship without justifiable cause and left her. On the contrary, the defendant contends that his wife is the deserter; that she refuses to live with him until he convinces her of his "stability, integrity, sincerity and honesty" and either returns the jewelry he had unlawfully taken or pays the note for $6,000. We think that the conduct of the defendant towards his wife is indefensible; that he purposely resumed marital relationship with his wife for comparatively short periods of time to avoid action by her against him for either maintenance or criminal prosecution for the jewelry he had stolen from her. On the other hand, while the plaintiff appears to have responded to his several invitations to resume marital relationships with him, we are inclined to the view that permanent establishment thereof was predicated upon her husband's compliance with her demand that he first return the jewelry or pay for it. We have a conviction that there is a lack of sincerity on the part of both parties towards effecting a reconciliation leading to any permanency. It appears from the evidence, and the Advisory Master so found, "that the defendant has been making payments of money to the plaintiff with fair regularity in sums *539 of $100 or more, and there is no proof in the case that such payments were inadequate or what the real needs of the plaintiff were." Our examination of the proofs impels us to concur in this finding of the trial court. We are satisfied, as was the Advisory Master, that "the plaintiff has failed to make out a case of unjustifiable abandonment and failure and refusal to adequately maintain and provide under the statute."
We think the trial court erred in its dismissal of the count of the complaint seeking payment for the value of the jewelry unlawfully taken and converted by the defendant. The defendant contends that his discharge in bankruptcy operated as a bar to any subsequent action on the promissory note in question, asserting that the plaintiff waived her right of action on the tort claim when she accepted the note for the value thereof and filed her claim in the bankruptcy proceedings. Section 35 of the Federal Bankruptcy Act, Title 11, as amended, June 22, 1938, c. 575, § 1, 52 Stat. 851, provides: "a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * *; (2) are liabilities for obtaining money or property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another. * * *" The right of a bankrupt to a discharge and the effect thereof are distinct matters and whether a discharge when granted will be a bar to enforcement of a claim which comes within the purview of 11 U.S.C.A. 35, is to be decided at the time and in the proceeding in which that claim is sought to be enforced and is not the concern of the bankruptcy court. In re Scandiffio, 63 F. Supp. 264 (D.C.N.Y. 1945). A debt that is not dischargeable in bankruptcy is not a bar to subsequent action thereon, even though it may be provable and share in the distribution of the bankrupt's estate. Hartford Accident & Indemnity Co. v. Flanagan, 28 F. Supp. 415 (D.C. Ohio 1939); Wilson v. Walters, 19 Cal.2d 111, 119 P.2d 340 (1941), and Rosenthal v. Levin, 21 N.J. Misc. 301 (Cir. Ct. 1943). The law is settled that the mere acceptance of a promissory note in payment, or as evidence of an indebtedness which otherwise would have been *540 excepted from the operation of a discharge in bankruptcy, does not operate to change the nature of the indebtedness, so as to take it out of such exception. In other words, the acceptance of the note does not render the claim dischargeable. American Surety Co. v. McKiearnan, 304 Mich. 322, 8 N.W.2d 82 (Sup. Ct., en banc, 1943), and collated cases in 145 A.L.R., pp. 1239-1244; Railroad Employees' Personal Loan Co. v. Dillon, 123 N.J.L. 31 (Sup. Ct. 1939); Rosenthal v. Levin, supra. But, defendant contends that when the plaintiff accepted the note for the value of the jewelry, the character of the debt was changed; that any tort action which the plaintiff theretofore had was extinguished and the filing of her claim in the bankruptcy court evidenced her acceptance of the note in payment of the jewelry and constituted a waiver of her right of action on the ground of the defendant's alleged fraud in the creation of the obligation. In support of his contention, the defendant cites the case of Maryland Casualty Co. v. Cushing, 171 F.2d 257 (C.C.A. 7th, 1948). We find, however, upon an examination of the Maryland Casualty Co. case, that it is not factually analogous. In that case the note sued upon was concededly given and accepted as a waiver of the antecedent right of action in tort. Where there is a waiver of the tort action, the debt is removed from the pertinent exception in 11 U.S.C.A. 35 and may be fully discharged by the bankruptcy proceedings; thereafter, if so discharged, it cannot be sued upon as a non-dischargeable indebtedness or obligation. In the present case, we find absolutely no factual analogy to the Maryland Casualty Co. case. The record is clear that there is no basis for the defendant's contention that the acceptance of the promissory note by the plaintiff and the proving of her claim in the bankruptcy court, constituted a waiver of her right of action for his tortious conduct. An examination of the agreement entered into between the parties on February 26, 1946, substantiates this conclusion. Paragraphs four and five clearly establish defendant's fraudulent conduct and that the promissory note in the sum of $6,000 was given by defendant to plaintiff "as security for the full performance" of defendant's agreement to return all *541 the jewelry in question on or before September 30, 1948. The plaintiff's right of action under the circumstances here is established by the case of Maryland Casualty Co. v. Cushing, supra, wherein the court held:
"The general rule is that a promissory note is but the evidence of indebtedness and does not discharge the debt for which it was given. And, of course, where a note is accepted only as evidence of a pre-existing debt and not as a satisfaction or waiver of a tort action, acceptance of such a note will not of itself waive the original cause of action. Blumberg v. Louis Henne Co., Tex. Civ. App. 5 S.W.2d 1015; Gehlen v. Patterson, 83 N.H. 328, 141 A. 914; and Mathewson v. Naylor, 18 Cal. App.2d 741, 64 P.2d 979."
We find from the evidence that the note sued on was given and received merely as security for the debt growing out of defendant's fraudulent action with respect to his wife's jewelry and her action for recovery of the amount due thereon was not barred by defendant's subsequent discharge in bankruptcy. Raia v. Goldberg, 33 Ala. App. 435, 34 So.2d 620 (1948); certiorari denied, 250 Ala. 398, 34 So.2d 625; Fidelity & Casualty Co. of N.Y. v. Golombosky, 133 Conn. 317, 50 A.2d 817 (1946). The plaintiff is entitled to a judgment for the amount of the note, together with interest thereon from the date thereof at the rate of 6% per annum.
We find no merit in defendant's contention that plaintiff cannot legally enforce her claim in equity against the defendant. The rule of law is settled to the contrary in numerous decisions of our courts. See Fike v. Fike, 3 N.J. Misc. 485 (Ch. 1925); affirmed, per curiam, 99 N.J. Eq. 424 (E. & A. 1926).
The judgment of the Chancery Division dismissing the count in the plaintiff's complaint seeking separate maintenance is affirmed. The dismissal of the count in the complaint seeking recovery on the promissory note for $6,000 is reversed. The cause is remanded for the entry of judgment in conformity with the foregoing determination. The plaintiff is allowed costs.